



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Leonard, Speaker
House of Representatives
47th Legislature
Austin, Texas

Dear Sir:

> Opinion No. 0-3468
> Re: Constitutionality of House
> Bill No. 46.

Your letter of May 1, 1941, submits to this department a request for an opinion on the constitutionality of House Bill 46, pending before the present Legislature.

House Bill 46 reads as follows:

"An Act amending Section 2 of House Bill 258, Chapter 125, page 229, of the General Laws of the Regular Session of the 45th Legislature, levying and appropriating the proceeds of a designated tax upon gross fire insurance premium receipts, less reinsurance and return premiums paid policyholders to the Fireman's Relief and Retirement Fund created by said Chapter 125 of the Acts of the Regular Session of the 45th Legislature, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"COMMITTEE AMENDMENT NO. 1

"Amend House Bill 46, by striking out all the enacting clause, and inserting in ereof, the following:

"'Section 1. That Acts 1937, 45th Legislature, page 229, chapter 125, section 2, be amended so as to read hereafter as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Section 2. For the purpose of providing permanent funds and revenue for the Firemen's Relief and Retirement Fund hereby created, there is hereby levied and assessed against every insurance corporation, Lloyd's, or reciprocals, and any other organization or concern transacting the business of fire insurance for profit within this State an annual tax of two (2) per centum upon its gross fire insurance premium receipts. Every such fire insurance carrier, at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of fire insurance premiums received upon property located in this State during the preceding year, and the gross fire insurance premium receipts, where referred to in this law, shall be the total gross amount of premiums received on each and every kind of fire insurance risk written, except premiums received from other licensed companies for reinsurance, less return premiums and dividends paid policyholders, but there shall be no deduction for premiums paid for reinsurance. The gross fire insurance premium receipts, as above defined, shall be reported and shown as the premium receipts, stating fire insurance premium receipts separately from other premium receipts in the report to the Board of Insurance Commissioners by the insurance carriers, upon the sworn statement of two principal officers of such carriers. Upon receipt by the Board of Insurance Commissioners of the sworn statements, showing the gross fire insurance premium receipts of such carriers, the Board of Insurance Commissioners shall certify to the State Treasurer the amount of Taxes due by each insurance carrier, which tax shall be paid to the State Treasurer, on or before the first of March following and the Treasurer shall issue his receipt to such carrier, which shall be evidence of the payment of such taxes. No such carrier shall receive a permit to do business in this State until all such taxes are paid. This act shall be cumulative of and in addition to all other taxing statutes of this State. Said tax, less

Honorable Homer Leonard, Speaker, Page 3

the proportion thereof for public school pur-
poses, shall be set aside, deposited into and
transferred to and for the use, benefit, and
purposes of said Firemen's Relief and Retire-
ment Fund and/or disbursed therefrom as herein
provided and directed.

"Section 2. The fact that the general in-
surance occupation tax laws, Article 7064 Texas
Revised Civil Statutes, as amended, have been
amended creates a necessity for the amendment of
Act 1937, 45th Legislature, page 229, Chapter
125, section 2 so as to conform thereto in plan
for the sake of better administration, and the
fact that there is now no effective revenue for
the support of the Firemen's Relief and Retire-
ment Fund, create an emergency and imperative
public necessity that the Constitutional Rule
requiring all bills to be read on three several
days in each House be suspended, and such rule
is hereby suspended, and the like necessity ex-
isting that the Constitutional Rule that no law
passed by the Legislature shall take effect until
ninety days after adjournment of the session at
which it was enacted be suspended, and such rule
is hereby suspended, and this Act shall take ef-
fect from and after its passage, and it is so
enacted.'"

House Bill 46 is proposed as an amendment to Sec-
tion 2 of the "Firemen's Pension and Relief Law",passed by
the Forty-fifth Legislature as House Bill No. 258 (carried
in Vernon's Civil Statutes as Article 6243e). The original
Section 2 was held to be invalid by the Austin Court of
Civil Appeals in American Alliance Insurance Company v.
Board of Insurance Commissioners, 126 S. W. (2d) 741, writ
refused. The ground of the decision was that provision of
the original Section 2 which prohibited the tax therein
levied from being taken into consideration in fixing the
rates to be charged for fire insurance by the companies
involved. This objectionable provision is not found in
House Bill 46.

In passing upon the constitutionality of House Bill 46, it will be necessary that the constitutionality of Article 6243e be determined insofar as the validity of House Bill 46 may depend upon the validity of the law of which it will if enacted constitute a part. Because of the length of Article 6243e, we will not attempt to copy the provisions thereof in this opinion.

The first question which arises in considering the constitutionality of House Bill 46 appears on the face of the bill, to-wit: May the Legislature levy an occupation tax on those engaged in a particular kind of business for profit, excluding from the operation of the taxing statute those engaged in the same kind of business, but not for profit? This involves the constitutional requirement of Article 8, Sections 1 and 2, that taxation shall be equal and uniform and that occupation taxes shall be equal and uniform "upon the same class of subjects within the limits of the authority levying the tax. . . ."

Since this question has been answered in the affirmative by our Opinion No. O-3436, addressed to you under date of March 1, 1941, we will undertake no further discussion of the question in this opinion.

In this connection, however, it has been suggested that House Bill 46 is unconstitutional because property owners, and insurance concerns not operating for profit, are not subjected to the tax, but receive the benefits of the protection accorded by the maintenance of fire-fighting organizations. This argument asserts the proposition that it is essential to the validity of a tax that the proceeds of the tax be expended for the benefits of those upon whom the tax is levied, as well as the proposition that classification for purposes of taxation must embrace all of those who may benefit by the expenditure of the tax moneys and none who do not so benefit. This is a misconception. A tax is not an assessment of benefits. Where taxes levied are otherwise lawful, the taxpayer cannot complain that the benefits derived from the expenditure of the funds are not proportioned to the burdens imposed upon him. There need be no relation between the class of taxpayers and the purpose to which the proceeds are applied. Carmichael v. Southern Coal and Coke Company, 301 U. S. 495, 81 L. Ed. 1245. The

Honorable Homer Leonard, Speaker, Page 5

rule that classification made by a statute must rest upon
some ground of difference having a fair and substantial
relation to the object of legislation does not require
that the classification made by a taxing statute be related
to the purpose for which the proceeds of the tax are to be
spent. New York Rapid Transit Corp. v. New York, 303 U. S.
573, 82 L. Ed. 1024.

It is likewise suggested that because other State
taxing statutes levy occupation taxes upon the same class
of subjects covered by House Bill 46, House Bill 46 is void
as constituting "double taxation". There is nothing in
either the Federal or State Constitutions forbidding "double
taxation" per se. Fort Smith Lumber Co. v. Arkansas ex rel.
Arbuckle, 251 U. S. 532, 64 L. Ed. 396. What is commonly
referred to as "double taxation", in the objectionable sense,
is inequality of taxation based upon arbitrary discrimina-
tion. Having the power to classify for the purpose of taxing
occupations, the Legislature likewise has the power to tax
one class of subjects and to determine the amount of tax to
be exacted of this class of subjects. So long as the classi-
fication is not arbitrary and there is no discrimination be-
tween the members of the class, it is immaterial that two
taxes of the same character are laid upon the members of the
class, instead, as might be done, of one tax equal in burden
to the burden effected by the total of the two.

Article III, Section 48, Article VIII, Section 3,
and Article XVI, Section 6, of our State Constitution pro-
hibit the levying of taxes and the appropriation of the
proceeds thereof for private, as distinguished from public
purposes. Article III, Section 51, denies to the Legisla-
ture the power to make or authorize "any grant of public
money to any individual, association of individuals, munici-
pal or other corporation whatsoever. . ." Article III,
Section 44, provides that no grant of moneys shall be made
to any individual except the same shall have been provided
for by preexisting law. While, admittedly, the State might
provide a system of pensions and disability benefits for its
employees without thereby violating the constitutional pro-
visions (Byrd v. City of Dallas, 118 Tex. 28), it is urged
that firemen are not employees of the State, but of the munici-
palities, and that, therefore, the law makes a grant of pub-
lic moneys in violation of the above Articles of the Consti-
tution.

For the purposes of this opinion it may be conceded that firemen are not State employees and that the Act does not make them such. We do not attempt the decision of that question. Nevertheless, it appears to us that the validity of the law as against such objections to its constitutionality is sustained by the decision of our State Supreme Court in the case of Friedman v. American Surety Company of New York, et al, handed down on April 9, 1941.

In that case, the majority of the court sustained the constitutionality of the Texas Unemployment Compensation Law. That law provides "insurance or compensation for the employees of a certain class of employers during involuntary unemployment." That law levies a tax upon employers within its terms, to be paid to the Commission and deposited in a special fund which the statute permanently appropriates for the purposes of the law. The benefits provided by the Act are not payable to all persons employed by others, during periods of involuntary unemployment, but, generally speaking, only to employees of employers who employ eight or more employees. Certain classes of employment are excluded from the Act, among them employment by the State, its instrumentalities and political subdivisions; agricultural labor; employment in private homes; employment on vessels on the navagable waters of the United States, employment under certain relatives; and employment in certain types of religious, charitable, scientific, literary, and educational organizations. Payments to the employees under the provisions of the law are without reference to the question of need.

The court sustained the constitutionality of the Texas Unemployment Compensation Law as against the following contentions:

1. That the exemptions rendered the Act violative of Constitution Article I, Section 3, as a denial of the equal protection of the laws.

2. That the law violated Constitution Article I, Section 16, prohibiting the passage of any bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts.

3. That the law violated Article I, Section 17, respecting the taking of private property for public use.

4. That the law violated Article I, Section 19,

Honorable Homer Leonard, Speaker, Page 7

the due process clause of the Texas Constitution.

5. That the law levied a tax and appropriated the proceeds thereof to other than "public purposes", in violation of Article III, Section 48, Article VIII, Section 3, and Article XVI, Section 6.

6. That the law granted public moneys to private individuals, in violation of Article III, Section 51.

7. That the law appropriates the proceeds of the tax permanently, rather than for not more than two years, in violation of Article VIII, Section 6, of the Texas Constitution.

We are bound to apply the decisions of our State Supreme Court in the determination of questions presented to this department, and the opinion of the majority in the Friedman case appears to sustain in principle the constitutionality of the Firemen's Pension and Relief Law. If anything, the case of the Firemen's Pension Law is the stronger, for the services rendered by firemen are public or governmental in character, being an exercise of the authority and duty of government to protect the citizens, not only as respects his physical safety and well-being, but in the enjoyment of his property. Article I, Section 3, of the Constitution preserves the authority of the sovereign to grant exclusive public emoluments in consideration of public services. And if it be urged that the services are not rendered to the State, but to the municipality, the answer is that the Friedman case sustains the grant of moneys collected through the exertion of the power of taxation to persons who are employees of private individuals and concerns, and whose employment is not in the discharge of a governmental function, on the ground that the moneys are devoted to the relief of unemployment, a public purpose, and that the compensation is not a gratuity, but earned by the services performed in private enterprise. If the relief of unemployment is a public purpose, certainly the expenditure of moneys as an inducement to individuals to render public service in the protection of life and property from the hazards of fire serves a public purpose. If the rendering of service to private employers

Honorable Homer Leonard, Speaker, Page 8

engaged in private business places the grant of unemployment benefits without constitutional condemnation of "gratuities" without the rendering of service in a public employment serves the same purpose with respect to the benefits provided by the Firemen's Pension Law.

The decision in the Friedman case likewise obliges us to reject the contention that, in appropriating the proceeds of the tax permanently, the Act violates Article VIII, Section 6, limiting the appropriation to two year periods. In the Friedman case, the court, in sustaining the Act as an exertion of the taxing power of the State, recognizes and affirms that taxes can be levied only for public purposes, but, nevertheless, holds that the proceeds of the tax there involved are "not the property of the State in any capacity, but. . . a trust fund to be held out of the State Treasury, . . . in the hands of the State Treasurer as Trustee" for the benefit of those to whom the benefits provided by the Act may be payable. The fund involved in the Firemen's Pension Law is of the same character as that involved in the Friedman case and we are therefore constrained to apply the doctrine of that case to the instant situation.

In any event, however, as observed in the Friedman case, the invalidity, if any, of the appropriation of the funds, for more than two years, would not invalidate House Bill 46. It would not affect the collection of the fund, but the authority to disburse it, and may be cured by biennial reappropriation of the fund for the purposes for which the fund is created.

It is urged that the original Act (House Bill 258, 45th Legislature) is invalid because containing more than one subject in the title, in violation of Section 35, Article III, Texas Constitution. This objection is without merit. The title is concerned with but a single subject, the providing of the comprehensive system of pension and disability benefits to firemen,-- and the provisions of the title and of the Act itself are all germane to this single purpose. Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915.

The objection that the Act violates Article III, Section 44, of our Constitution, by providing extra compen-

sation after public service is performed to the persons performing such service, must be rejected on the authority of Byrd v. City of Dallas, et al, 118 Tex. 28.

This disposes of all questions which occur to us relative to the constitutionality of House Bill 46 upon its face and as it is may depend upon the constitutionality of the Act of which it will form an integral part. In view of the necessity for prompt action upon your request, because of the near approach of the end of this legislative session, we have not undertaken in this opinion an exhaustive treatment of the subject, nor have we attempted a discussion of conflicting authorities in other jurisdictions respecting laws of the same general character. It suffices to say that we have had the benefit of the briefs prepared before the Court of Civil Appeals in the case of American Alliance Insurance Company v. Board of Insurance Commissioners, above cited, we have given the matter careful consideration, and upon the authorities and reasoning above cited and expressed, are of the opinion that House Bill 46 is constitutional.

Yours very truly

APPROVED MAY 19, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By

R. W. Fairchild
Assistant

RWF:IS

